IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:16-cr-129 |
| | ) | |
| vs. | ) | DEFENDANT'S |
| | ) | SENTENCING MEMORANDUM |
| DENNIS EUGENE KIMBALL, | ) | |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     A SENTENCE OF TIME SERVED IS A SUFFICIENT SENTENCE, BUT ONE NOT GREATER THAN NECESSARY, AFTER CONSIDERING THE TITLE 18 U.S.C. § 3553(a) FACTORS DUE TO THE CIRCUMSTANCES OF THE CASE AND THE DEFENDANT'S HISTORY AND CHARACTERISTICS. . . . 2

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**INTRODUCTION**

Mr. Kimball respectfully asks the court to impose a sentence of time served.

**ARGUMENT**

I. **A TIME-SERVED SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, AFTER CONSIDERING THE TITLE 18 U.S.C. § 3553(a) FACTORS DUE TO THE CIRCUMSTANCES OF THE CASE AND THE DEFENDANT'S HISTORY AND CHARACTERISTICS.**

Mr. Kimball submits that a sentence of time served is a sufficient sentence after considering the 3553(a) factors. This conclusion is supported by many factors, including the circumstances of the case and the defendant's history and characteristics which include his: (1) difficult childhood; (2) substance abuse history, and his need for treatment in the community; (3) timely acceptance of responsibility; (4) family and community support, and; (5) success at the half-way house prior to this incident.

The general goals of sentencing require consideration of "the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2). The court must also consider "the kinds of sentences available," the sentencing guidelines and relevant policy statements, the need to avoid sentencing disparities, and the need to provide restitution to any victim. 18 U.S.C. §3553(a)(3)-(7).

Mr. Kimball is 52 years old, and was born and raised in Des Moines, Iowa. (PSR ¶ 54). He was adopted soon after birth and he was never fully informed as to why. (PSR ¶ 54). There is some information that his parents were not ready to have a child, due to age, substance abuse and possibly criminal behaviors. (PSR ¶¶ 54, 56). At such a young age, one of the most crucial periods of brain development, to not be with his mother and father must have had an effect on him developmentally.

2

The separation from his birth mother at such a tender age could have led to significant emotional problems, including attachment disorder and separation anxiety.  *See* Fonagy, Peter, *Attachment Theory and Psychoanalysis*, Other Professional, 2010.  This kind of emotional trauma can lead to substance abuse, and behavioral disorders, both of which put Mr. Kimball's criminal history in perspective.  One could reasonably conclude that Mr. Kimball's challenging youth presented significant hurdles to his emotional and cognitive development.

While he reports a "decent" childhood, there are clear signs that this may not have been the case.  Apparently at a young age he was admitted to the Broadlawns Medical Center for a mental health evaluation, the results of which are unknown. (PSR ¶ 68).  The fact that he was taken for the evaluation suggests that a care giver had concerns about his mental or behavioral health.  Apparently while incarcerated in 1997, he experienced suicidal ideation and was self-mutilating, symptoms that may have a direct link to his childhood.  (PSR ¶ 68).  At the age of 11 he began to drink alcohol heavily and continued with this habit into adulthood. (PSR ¶ 69).  Also at the age of 11, he began to use marijuana.  (PSR ¶ 73).  As a teenager he began to use cocaine heavily (an eighth of an ounce every weekend). (PSR ¶ 70).  He dropped out of school in the eighth grade, and at the age of 17, he was convicted of burglary as an adult. (PSR ¶¶ 25, 76).  This history suggests that he was essentially on his own from a young age, associating with drug users and struggling to cope.

This background helps explain his criminal behaviors throughout his life.  As he explained to the PSR writer, he has spent the better part of his life in prison. (PSR ¶ 55).  It is reasonable to conclude that his skills for coping in society are underdeveloped.  But the facts of this case reflect an individual trying to build a life with very little experience or skills in his background to guide him.  When he was released to the half-way in BOP custody in May of 2016, he eventually found a job at Fawn Manufacturing in Clive, Iowa. (PSR ¶ 79).  He was proud to get that job. (PSR ¶ 79).

He was 52 years old and it was his first job. (PSR ¶ 79). But when problems arose and the job was terminated, he panicked and his judgment was impaired by his fear. He immediately took steps to locate another job without notifying his counselor at the half-way house that his job was terminated. He utilized his furlough for his then-terminated job to look for suitable employment. When his mistake was evident to the staff at the half-way house, he made the poor decision to not report back to the facility. When arrested by LEO, he immediately admitted to his inappropriate conduct.

For Mr. Kimball, the two months or so that he worked at Fawn Manufacturing actually reflects progress for him. He showed during that time that he could comply with rules and regulations on the outside of the prison walls, an important milestone. He is now committed and motivated to succeed in society. He certainly is of the age now where hopefully he has aged out of his prior criminal behaviors. Mr. Kimball would like to reside in a half-way house environment while on supervision. The structure and supervision provided at the facility will help him transition into his own residence. Mr. Kimball is a work in progress, and this incident has been a learning experience for him.

While residence at a half-way house while on supervised release would offer the structure and support to help Mr. Kimball succeed, it would also be a significant restriction of his liberty, and would offer a measure of deterrence. In *Gall v. United States*, 128 S. Ct. 586, 595 (2007), the Supreme Court recognized that offenders on probation or supervised release are subject to substantial restrictions on their liberty, including provisions requiring that they may not leave the district, move or change jobs without notifying their probation officer, report regularly to their probation officer, prevent unannounced visits to their homes, and refrain from associations with certain persons. While on supervision, the defendant will undoubtedly be subject to all of these conditions, plus additional conditions requiring drug treatment and mental health counseling.

Mr. Kimball has been involved in a relationship with Crystal Acosta. (PSR ¶ 15). His goal is to find work, find a home, and begin to build his life with her. He has a son from a prior relationship who is now 25 (Jessie Kimball). (PSR ¶ 63). He dreams of settling down and developing a relationship with his son, whom Mr. Kimball does not know well due to his lengthy periods of incarceration.

Mr. Kimball was indicted on August 24, 2016, and his first appearance in federal court in this matter was August 30, 2016. (Doc. # 10). He pled guilty less than one month later on September 22, 2016. (PSR ¶ 2). This extraordinary acceptance of responsibility saved prosecutorial and judicial resources and time, and deserves consideration for a downward variance. *See United States v. Nguyen*, 212 F.Supp.2d 1008, 1021 (N.D. Iowa 2002) (pre-*Booker* case recognizing extraordinary acceptance of responsibility as a grounds for a traditional departure). His expedited plea of guilty also reflects his strong motivation toward rehabilitation.

Mr. Kimball lost a good portion of his BOP good-time credit as a response to this incident. (PSR ¶ 42). His projected release date prior to this incident was July 11, 2016. (PSR ¶ 42). He has been in USMS custody housed in the Polk County jail since August 30, 2016, approximately 5 months. (PSR Release Status pg. 1). 5 months in the restrictive environment of the county jail is a significant punishment in and of itself. No further deterrence is necessary to send a strong message to Mr. Kimball that this kind of behavior will not be tolerated.

## CONCLUSION

For all these reasons, Mr. Kimball respectfully asks the court to impose a sentence of time-served. Such a sentence is sufficient but not greater than necessary to comply with the factors set forth in 18 U.S.C. § 3553(a).

CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2017, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
  /s/Melinda Guynn, Paralegal

 /s/ *Timothy S. Ross-Boon*
TIMOTHY S. ROSS-BOON

FEDERAL DEFENDER'S OFFICE
400 Locust Street
Suite 340, Capital Square
Des Moines, Iowa 50309-2353
TELEPHONE: (515) 309-9610
TELEFAX: (515) 309-9625
E-MAIL: timothy_rossboon@fd.org

ATTORNEY FOR DEFENDANT